OPINION. Arundell, Judge: The substance of respondent’s contention is that the several agreements between the petitioner and the nonresident aliens amounted to nothing more than licenses to use patents and that all payments made thereunder were “royalties,” which, under the regulations,[1] constitute fixed or determinable annual or periodical income, subject to withholding of tax under section 143 (b) of the Internal Revenue Code[2] ánd its predecessor provisions in earlier revenue acts. Petitioner, on the other hand, contends that all of the payments, including those based on production and sales which it reported in the delinquent returns filed in 1944, represented either the purchase •price for the sale of personal property (patents), which is not subject to withholding under the regulations,[3] or compensation for personal services performed without the United States, which, by virtue of section 119 (c) (3) of the code, is not income from sources within the United States and therefore is not subject to withholding under section 143 (b). Petitioner also points out'that under section 212 (a) of the code and comparable provisions of the earlier revenue acts here involved, “In the case of a nonresident alien individual gross income includes only the gross income from sources within the United States.” We think that, except for the Meyer contract of September 17,1925, petitioner’s position is correct. The contract with- Dichter and the ' contract of June 2, 1933, with Meyer both provided, in part, for the performance of personal services without the United States; and it is clear that some part of the payments made to them pursuant to the contracts was in consideration of such services. In part, the June 1933 Meyer contract superseded the oral agreement with him on January 1, 1933, to make payments for services in continental Europe, which payments the respondent has conceded are not subject to withholding. It is unnecessary, however, to determine just what portion of the payments to Meyer and Dichter under these contracts represented compensation for services, because we think the rest constituted the purchase price for the sale of property. As to the Dichter and Favre agreements,- respondent stresses the fact that they are called licenses and that the parties thereto are referred to as licensor and licensee. It is settled law, however, that the true nature of the agreement is not to be determined according to the name by which it is called. Waterman v. Mackenzie, 138 U. S. 252. The granting of a United States patent gives the patentee, for a term of 17 years, the exclusive right to make, use, and vend the invention or discovery in the United States. Rev. Stat., § 4884, 35 U. S. C. § 40. When the patentee transfers all of these rights exclusively to another, even though he calls the instrument a license rather than an assignment, he transfers all that he has by virtue of the patent and the transfer amounts to a sale of the patent. Where he transfers less than all three rights to make, use, and vend for the term of the patent, or transfers them nonexclusively, the transfer is a mere license and does not convey any title in the patent itself. Waterman v. Mackenzie, supra; cf. United States v. General Electric Co., 272 U. S. 476; Edward C. Myers, 6 T. C. 258. In the agreements with both Dichter and Favre petitioner was granted an exclusive and transferable license “to make, use and vend” the inventions covered by the patents and patent applications included, throughout the territory in which such patents were effective, and for the life of the patents. These contracts are much the same as that involved in the Myers case, supra, and, as in that case, they amount to a sale of the patents and patent applications involved. The June 2,1933, agreement with Felix Meyer unquestionably is an outright sale. Meyer expressly assigned to petitioner all his United States and Canadian patents and patent applications, with three stated exceptions. Compare the contracts involved in General Aniline & Film Corporation v. Commissioner, 139 Fed. (2d) 759, and in Commissioner v. Celanese Corporation, 140 Fed. (2d) 339. The fact that, in addition to the fixed payments, other payments based on a percentage of profits or on production were called for under the contracts does not change the result. It is not infrequent that patents are sold under such terms, or even where the entire consideration is based on a percentage of income during the life of the patents. See, for example, Associated Patentees, Inc., 4 T. C. 979; Littlefield v. Perry, 21 Wall. 205; and the Celanese case, supra. And in such cases the percentage payments, though in many respects like royalties payable under a license, are no less payments of purchase price for the patent than are fixed or lump sums. Respondent also emphasizes the rights which both the petitioner and the nonresident aliens had to terminate the contracts under certain conditions, or for petitioner to continue under a nonexclusive license arrangement. The retention of these rights, however, does not nega--tive sales of the patents. These are much like provisions appearing in the contracts involved in the Myers and Celanese cases which were held to be mere conditions subsequent, not interfering with the passage of ownership from the patentee to the other contracting party. Finally, the Celanese case answers in the negative the argument that, even though there may be sales of the patents, periodic payments therefor fall within the scope of the withholding statute wherever the seller of the invention still has an “economic” interest in its successful exploitation. That leaves for consideration the earlier Meyer contract dated September 17, 1925. Unlike the Dichter and Favre agreements, this contract did not convey to petitioner all three of the exclusive patent rights, i. e., to make, to use, and to vend. Only the rights to manufacture and to sell are mentioned. Under the rule of the ’Waterman case, the agreement therefore appears to be a mere license. Parke, Davis & Co., 31 B. T. A. 427, we think, is so different factually that it does not support petitioner’s contention that the instant contract amounted to a sale of the patent. There is no extrinsic evidence to show that the parties intended a sale rather than a license; and, on the basis of the written document alone, we conclude that only a license was effected. Furthermore, we do not think this contract contemplated the performance of personal services without the United States, as did the later agreements with Meyer. It follows that the payments under this contract in the years 1925 and 1927 to 1933„inclusive, were subject to withholding. As to the delinquency penalties, the record affords no basis for a finding of reasonable cause for failure to file returns for any year prior to 1936. Therefore, the penalties as to the payments under the 1925 Meyer contract were properly imposed. In view of our holding that payments under the other contracts were not subject to withholding, the question of penalties as to those payments becomes moot. D.eoision will ~be entered under Bule SO. Treasury Regulations 103 : “Sec. 19.143 — 2. Fixed or determinable annual or periodical income. — Only fixed or determinable annual or periodical income is subject to 'withholding. The Internal Revenue Code specifically includes in such income, interest, dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations and emoluments. But other kinds of income are included, as, for instance, royalties. ♦ * * * * * * «* * * The income derived from the sale in the United States of property, whether real or personal, is not fixed or determinable annual or periodical income.” The provisions of earlier regulations in force throughout the period here involved were substantially the same. SEC. 143. WITHHOLDING OF TAX AT SOURCE. * * * * * * * (b) Nonresident Aliens. — All persons, In whatever capacity acting, * * * having the control, receipt, custody, disposal, or payment of interest * * *, dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income (but only to the extent that any of the above items constitutes gross income from sources within the United States), of any nonresident alien * * * not engaged in trade or business within the United States and not having any office or place of business therein * * * shall * * * deduct and withhold from such annual or periodical gains, profits, and income a tax equal to 27 ⅜ per centum thereof * * *. [See also section 221 (a) of the Revenue Acts of 1924 and 1926 ; section 144 (b), Revenue Act of 1928, and section 143 (b) of the Revenue Acts of 1932, 1934, 1936 and 1938, which were substantially the same as the above. Cf. section 119 (a) (4), I. R. C.] See footnote 1, supra.