## BLOCH v. UNITED STATES.

United States District Court,
S. D. New York.
Dec. 11, 1951.

458

Arthur Weissbarth, New York City, for plaintiff.

Myles J. Lane, U. S. Atty. for S. D. N. Y., New York City, for defendant.

SUGARMAN, District Judge.

On January 15, 1932 in Czecho Slovakia, plaintiff and two other persons entered into an agreement concerning a bimetal thermometer, of which the plaintiff shortly thereafter completed development. Application for a United States patent, made on March 3, 1932, was granted the plaintiff on August 14, 1934. Under the partnership agreement the plaintiff held this patent as trustee for all of the partners equally as tenants in common. Subsequent to April 9, 1935 a fourth equal partner was admitted.

On April 29, 1935, the partners made an agreement with Weston Electrical Instrument Corporation of Newark, New Jersey in which the partners were denominated as "the Licensors" and Weston was denominated as "the Licensee". It was therein agreed, among other things, that Weston would pay the partners $75,000, of which $40,000 was to be paid upon the execution of the agreement; that the partners granted to Weston "an exclusive license to make, use, exercise and vend" throughout the United States, its Territories and Posses-

sions, all kinds of thermometers under the partners' patent; that other licensees or assignees of the partners would not compete with Weston in said territories; that at certain periodic intervals Weston would pay the partners "a royalty" made up of stipulated amounts or percentages on varying types of thermometers, but, that after 1935 the minimum annual payment to be made by Weston to the partners was to be $25,000, provided further that the percentages were to be reduced as "total royalty payments" reached given amounts; that the balance "between the contract consideration of $75,000 and the down payment of $40,000" was to be liquidated by means of "excess royalties" of stipulated amounts on varying types of thermometers until complete amortization of the $35,000 balance; that Weston would not "sell or assign in any manner whatsoever the entire license" without the partners' written consent and upon the proposal of such sale the partners were to "have the right of first refusal to repurchase the license for themselves"; that the partners would not, without Weston's written consent, "make, use, exercise or vend" any such thermometers in the United States or its Territories and Possessions or license any one else to do so; that should Weston default in payment under the contract, the partners could, after a grace period, "terminate the license" whereupon Weston's rights thereunder would "cease and terminate"; that upon Weston's notice to the partners of its decision to discontinue making the thermometers, the agreement would end; and that if, for three consecutive years, the total annual "royalties" of $25,000, although paid by Weston, exceeded the earned amount under the percentage terms of the agreement, the partners could cancel the agreement. Appended to the said agreement and separately executed, is a "Schedule" reciting that "by this deed * * * and in pursuance of the within agreement" the partners granted to Weston "full, sole and exclusive license and authority to make, use, exercise and vend thermometers" under the patent for its duration in the United States and its Territories and Possessions.

Under the foregoing agreement, plaintiff received, in 1935, $9,116.66 as his net share of the $40,000 down payment made by Weston to the partners. On March 5, 1946, upon the insistence of the Bureau of Internal Revenue, the plaintiff filed a return for 1935 and paid an income tax of $499.67 which, together with interest of $289.81, aggregated $789.48 for which he duly claimed and was denied a refund.

Weston's obligation, under its agreement with the partners, required that it pay certain sums of which the plaintiff's share for the years 1944, 1945 and 1946 amounted to $5,718.02, $6,525.28 and $8,091.21, respectively. Instead, it paid sums from which the plaintiff received $4,002.62, $4,567.78 and $5,663.83, respectively, remitting to the defendant the respective differences as income taxes withheld, including $1,715.-40, $1,957.50 and $2,427.38 of the plaintiff's shares. In October, 1948, at the request of the defendant the plaintiff filed returns for 1944, 1945 and 1946. Thereafter he filed claims for refund of said taxes withheld which were subsequently denied.

In due course, the plaintiff commenced this suit to recover the $6,889.76 total of his payment for 1935 and Weston's withholdings in 1944, 1945 and 1946. Defendant answered. The parties then stipulated that the plaintiff's suit was brought under §§ 119, 143 and 211 of the Internal Revenue Code; that the plaintiff was and is a German citizen and a non-resident alien not engaged in business and maintaining no office in the United States.

The facts above set forth, except those dealing with the 1935 tax, were, in substance, also stipulated. The plaintiff now moves and the defendant cross moves for summary judgment.

 The resolution of these motions depends upon the agreement of April 29, 1935 between Weston and the partners. Was it a sale or a license? The effect of the instrument is determined by its substance and not by its appellation. If the agreement transfers the total rights of the grantor in his patent to make, use and vend the invention, it is a sale; if it grants less, it

is a license. In 1891, Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923, so held in an infringement suit decided long before the establishment of the Federal Income Tax in 1913. Decisions under the 16th Amendment, treating with this question, have consistently adhered to the Waterman doctrine. See Myers v. Commissioner, 1946, 6 T.C. 258. Designation of the grantor as "licensor" and of the grantee as "licensee" is not controlling; what was conveyed, is. Myers v. Commissioner, supra. Installment payment, based upon a percentage of earnings or sales, if the agreement transfers the total rights of the grantor to make, use and vend the invention, does not diminish its character from that of a sale to that of a license. Commissioner of Internal Revenue v. Hopkinson, 2d Cir., 1942, 126 F.2d 406.

■ If there be doubt that Weston's agreement with the partners was a total assignment, it is dispelled by the "Schedule" annexed thereto and separately executed by the parties. Reading both together the intent is manifest that the "Schedule" effected a complete assignment of the partners' rights to make, use and vend the invention, upon terms of payment enunciated in the companion agreement.

■ The fourth cause of action of the complaint seeks recovery of the $789.49 paid by the plaintiff as income tax upon his share of the 1935 down payment and interest thereon, pursuant to a return filed by him in March, 1946. The propriety of this tax must be tested in the light of the Revenue Act of 1934, in effect May 10, 1934, and therefore in force on April 29, 1935, when the contract between Weston and the partners came into being and the down payment was made. Under that Act there was no distinction for tax purposes, between license royalties and the proceeds of a sale. Revenue Act of 1934, § 119(e)(2), 48 Stat. 718 (1934), 26 U.S.C.A. § 119. Both were taxable, 36 Columbia L.R. 908, although only the tax on the former was withheld. Revenue Act of 1934, § 143, 48 Stat. 723–724 (1934), 26 U.S.C.A. § 143. Accordingly, the defendant's cross-motion for summary judgment is partially granted to the extent of dismissing the fourth cause of action of the complaint.

The first, second and third causes of action of the complaint deal with the taxes withheld by Weston in 1944, 1945 and 1946.

■ In 1936 Congress exempted from tax the consideration received for a sale of personal property by a non-resident alien. Revenue Act of 1936, § 211, 49 Stat. 1714 (1936) and § 143, 49 Stat. 1700–1701 (1936), 26 U.S.C.A. §§ 211, 143, 35 Cornell L. Q. 893. Thus, the plaintiff's receipts in 1944, 1945 and 1946 were not subject to tax and the withholding thereof was improper. General Aniline & Film Corp. v. Commissioner, 2d Cir. 1944, 139 F.2d 759. The contract at bar is one entirely for a sale and not one of multiple nature—i. e. sale *and* license, contemplated by footnote 16 at page 64 of Rohmer v. Commissioner, 2d Cir., 1946, 153 F.2d 61.

The defendant offers Commissioner of Internal Revenue v. Wodehouse, 337 U.S. 369, 69 S.Ct. 1120, 93 L.Ed. 1419, in support of its cross-motion for summary judgment. The Wodehouse case is inapplicable to the facts at bar because first, it deals with a literary copyright and not a patent, and second, there was a reservation of rights by the grantor making the transaction a transfer of less than his entire bundle of rights. Both the majority and dissenting opinions recognize that a sale, as distinguished from a license, escapes the tax impact. Mr. Justice Burton, writing for the majority says 337 U.S. at page 382, 69 S.Ct. at page 1126: "It was equally clear that *income derived from a sale* in the United States, of either real or personal property, was not included, either expressly or by implication or interpretation, in the income subject to a withholding of the tax on it at the source of the income." (Emphasis in original.)

Mr. Justice Frankfurter, writing for the minority says 337 U.S. at page 407, 69 S.Ct. at page 1138: " * * * receipts from a sale are not taxable even though such proceeds are from a source within the United States * * *".

The contract at bar being one for a sale of the partners' entire bundle of rights under the patent, the plaintiff's motion is partially granted to the extent of his having summary judgment on the first, second and third causes of action of his complaint.

Settle order on notice.