## BLOCH v. UNITED STATES.

No. 22, Docket 22389.

United States Court of Appeals Second Circuit.

Argued Oct. 16, 1952.

Decided Nov. 21, 1952.

Myles J. Lane, U. S. Atty., New York City, Lawrence G. Greene, Asst. U. S. Atty., New York City, of counsel, for defendant-appellant.

Arthur Weissbarth, New York City, for plaintiff-appellee.

Shearman & Sterling & Wright, New York City, Thomas P. Ford, New York City, of counsel, for amicus curiæ Eterpen Financiera Sociedad de Responsabilidad Limitada (formerly Eterpen, S.A.)

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the United States from a summary judgment for the plaintiff granting the latter's claim for tax refunds for the years 1944, 1945 and 1946, D.C., 102 F.Supp. 457. The question raised by the appeal is whether an agreement gov-

erning certain patent rights, dated April 29, 1935, constituted a mere license agreement with the payment of royalties, or a sale. If the former, the plaintiff would clearly be taxable under § 211(a), 26 U.S.C.A.[1]

The taxpayer, a non-resident alien who was a citizen and resident of Germany, not engaged in business in the United States, owned in partnership with two other persons certain patents issued by the United States, Great Britain, Germany and Czechoslovakia. These patents were issued in the name of the taxpayer who held them as trustee for the benefit of all of the partners. On April 29, 1935, the partnership entered into an agreement with Weston Electrical Instrument Corporation of Newark, New Jersey, under which it granted to the latter an exclusive "license" to "make, use, exercise and vend" all kinds of thermometers, thermostats and temperature measuring instruments and parts thereof in accordance with the United States patents throughout the United States, its territories and possessions. The Weston Corporation paid royalties for the use of the patent, and paid to the United States government withholding taxes based upon the taxpayer's share of the royalties which, for the years in question, were as follows:

| | 1944 | 1945 | 1946 |
|---|---|---|---|
| Share of royalty | $5,718.02 | $6,525.50 | $8,091.28 |
| Tax withheld | $1,715.40 | $1,957.50 | $2,427.38 |

The taxpayer filed refund claims for the taxes withheld. The claims were rejected by the Commissioner on November 7, 1949, and this action was commenced on June 28, 1950.

Under the agreement above referred to Weston was to pay the partners $75,000, of which $40,000 was to be paid at the time of execution of the contract. At certain periodic intervals Weston was to pay a "royalty" made up of stipulated amounts or percentages on varying types of thermometers, but after 1935 the minimum annual payment was to be $25,000, and the percent-

---

1. "§ 211. *Tax on nonresident alien individuals.*

"(a) *No United States business or office*

"(1) *General rule*

"(A) *Imposition of tax.* There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 11 and 12 upon the amount received, by every nonresident alien individual not engaged in trade or business within the United States, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 30 per centum of such amount, except that such rate shall be reduced, in the case of a resident of any country in North, Central, or South America, or in the West Indies, or of Newfoundland, to such rate (not less than 5 per centum) as may be provided by treaty with such country."

This tax is to be withheld at the source under § 143:

§ 143. *Withholding of tax at source*

*       *       *       *       *

"(b) *Nonresident aliens.* All persons, in whatever capacity acting * * * having the control, receipt, custody, disposal, or payment of interest (except interest on deposits with persons carrying on the banking business paid to persons not engaged in business in the United States), dividends, rent, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income (but only to the extent that any of the above items constitutes gross income from sources within the United States), of any nonresident alien individual, or of any partnership not engaged in trade or business within the United States and composed in whole or in part of nonresident aliens, shall * * * deduct and withhold from such annual or periodical gains, profits, and income a tax equal to 30 per centum thereof, * * *."

§ 119 defines what is income from sources within the United States and provides:

§ 119. *Income from sources within United States*

*       *       *       *       *

"(4) *Rentals and royalties.* Rentals or royalties from property located in the United States or from any interest in such property, including rentals or royalties for the use of or for the privilege of using in the United States, patents, copyrights, secret processes and formulas, good will, trade-marks, trade brands, franchises, and other like property".

ages were to be reduced as total royalty payments reached stated amounts. The agreement further provided that as soon as the $35,000 payable in excess royalties had been liquidated, future royalties should be reduced to amounts specified in the contract. Weston also agreed not to "sell or assign in any manner whatsoever the entire license" without the partners' written consent; the partners were to "have the right of first refusal to repurchase the license for themselves." In addition the agreement provided that the partners would not without Weston's written consent "make, use, exercise or vend" any such thermometers in the United States or its territories and possessions, or license anyone else to do so; that should Weston default in its covenants under the contract, the partners could "terminate the license" whereupon Weston's rights thereunder would "cease and terminate"; that upon Weston's notice to the partners of its decision to discontinue making the thermometers, the agreement would end; and that if, for three consecutive years, the total annual "royalties" of $25,000, although paid by Weston, exceeded the earned amount under the percentage terms of the agreement, the partners could cancel the agreement. In the event of any infringement being brought to the notice of the partners, they were to take necessary steps to stop such infringement, the cost of legal proceedings to be equally shared and the decision to take such proceedings to be by mutual agreement. The partners, who were to pay all renewal fees, retained the right to exploit the patents outside of the United States. Any improvements or further inventions made by Weston with respect to the patent were required to be disclosed to the partners and might be patented by them in their name. Further, Weston agreed not to raise any question as to the validity of the patent. Appended to the agreement and separately executed, is a "Schedule" reciting that "by this deed * * * and in pursuance of the within agreement" the partners grant to Weston "full, sole and exclusive license and authority to make, use, exercise and vend thermometers" under the patent for its duration in the United States and its territories and possessions.

In determining whether the plaintiff is taxable under § 211(a) we must be guided by the opinion of the Supreme Court in Commissioner of Int. Rev. v. Wodehouse, 337 U.S. 369, 69 S.Ct. 1120, 93 L.Ed. 1419. That opinion indicates that in § 211(a) the Revenue Act of 1936 preserves the taxability of certain kinds of income of nonresident alien individuals which had been previously subject to withholding at the source. The court said that "[the legislative] history shows that Congress was seeking to continue to tax, and even to increase the tax upon, those kinds of income which had been found to be readily withholdable at their respective sources. Accordingly, what Congress did was to incorporate the very langage of the withholding provisions of § 143(b) into the language of the taxing § 211(a)." 337 U.S. at page 391, 69 S.Ct. at page 1130. Consequently we must inquire as to whether the payments in question here would have been properly withheld under § 143(b) prior to the Revenue Act of 1936. We think that they properly would have been so withheld because we do not believe that there was a sale of the patent for tax purposes as regards the royalties arising out of its future use. Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923, decided the procedural question as to who are indispensable parties in an infringement suit. Different considerations were obviously involved, and the court's statement as to what constitutes an assignment of title to a patent is not necessarily controlling in the field of taxation. If there had been a provision under the contract with Weston for lump sum payments even though made annually or periodically in the future, the applicable ruling of the Treasury[2] would seem to treat the payments as

---

2. I.T. 1232, I-1 Cum.Bull. 207 (1922). Cf. Parke, Davis & Co. v. Commissioner, 1934, 31 B.T.A. 427, Acq. XIV-1 C.B. 15 (1935). The applicable regulation,

Reg. 86, Art. 143-2 under the Revenue Act of 1934, provided:
"Fixed or determinable annual or periodical income.—

instalments on the sales price. But such payments as were to be made here, varying according to sales of the patented product, would seem to be essentially royalties. They were treated as such in 1944, 1945 and 1946 when Weston withheld the tax. We would only exempt lump sum payments made on account of a purchase price, but not such royalties as were involved here. There seems to be no doubt that the lump sum payment of $40,000 made here was not subject to withholding when made and not taxable as a royalty, See Parke, Davis & Co. v. Commissioner, 31 B.T.A. 427, Acq. XIV–1 C.B. 15, but that the royalties from which the tax was withheld in 1944, 1945 and 1946 fall within a different category. Our conclusion is reinforced by the evident purpose of the Revenue Act of 1936 to impose a tax readily collectible because of the ease in withholding from periodic payments at the source. Commissioner of Int. Rev. v. Wodehouse, 337 U.S. 369, 388, 69 S.Ct. 1120, 93 L.Ed. 1419; Rohmer v. Commissioner, 2 Cir., 153 F.2d 61, 64.

The many substantial rights in the patent retained by plaintiff are further indications of the failure to transfer absolute ownership for purposes of § 211(a). But the crux of the matter seems to us to be the retention of an interest in the profitable exploitation of the patented articles by receipt of a percentage of the sales price or a stated amount for each article sold. Without such an interest there would be less need to keep the other rights retained here, particularly the right to terminate the agreement on Weston's default and recapture the patent.

The plaintiff argues that our decision in Commissioner of Int. Rev. v. Hopkinson, 2 Cir., 126 F.2d 406, requires us to treat the royalty payments as made on account of the purchase price. We do not think that decision necessarily involves such an interpretation. There the rights of a nonresident alien not doing business in the United States were not involved, or the statute defining such rights.. We expressly so stated in Rohmer v. Commissioner, 2 Cir., 153 F.2d 61, 64, note 16. Moreover, Judge Chase, who wrote the opinion in the Hopkinson case, concurred in the Rohmer decision. Furthermore, in General Aniline & Film Corp. v. Commisssioner, 2 Cir., 139 F.2d 759, 760, a court consisting of L. Hand, Chase and Frank, Circuit Judges had stated that "the passing of title does not preclude the existence of royalties."

We are aware of the fact that royalties resulting from a transfer of a patent were apparently held to be payments of the purchase price in Allen v. Werner, 5 Cir., 190 F.2d 840, and Commissioner of Int. Rev. v. Celanese Corp., 78 U.S.App.D.C. 292, 140 F.2d 339, but we have not acceded to this view in our decisions, discussed above, and we see no sufficient reason for holding that payments of a percentage of future earnings of a patent should be treated as falling outside the scope of § 211(a). So far as the decisions of the Courts of Appeal for the Fifth and District of Columbia Circuits and the Tax Court, Kimble Glass Co. v. Commissioner, 9 T.C. 183; cf. Myers v. Commissioner, 6 T.C. 258, are to the contrary we respectfully differ with their conclusions.

For the foregoing reasons the summary judgment for the plaintiff is reversed with direction to enter judgment for the defendant, The United States of America.

CLARK, Circuit Judge.

I concur in the decision and generally in the opinion, but, because I am not sure and

---

"Only fixed or determinable annual or periodical income is subject to withholding. The Act specifically includes in such income, interest, rent, salaries, wages, premiums, annuities, compensations, remunerations and emoluments. But other kinds of income are included, as, for instance, royalties.

"Income is fixed when it is to be paid in amounts definitely predetermined. Income is determinable whenever there is a basis of calculation by which the amount to be paid may be ascertained. The income need not be paid annually if it is paid periodically; that is to say, from time to time, whether or not at regular intervals. * * * The income derived from the sale in the United States of property, whether real or personal, is not fixed or determinable annual or periodical income."

the matter is not in issue now, I should prefer not to attempt to pass upon the withholding or taxability of the initial payment of $40,000. The additional payments to make up the $75,000, I take it, are taxable and a like conclusion might well be reached as to the first sum. I mention the matter because I am concerned lest we fashion a precedent for the future without briefing or argument. Were we to speculate I opine that courts in cases of this general nature might well hesitate to separate the consideration into diverse categories, rather than to treat it as a unit.