Dougal C. Pope, Houston, Tex., for plaintiffs.

Malcolm R. Wilkey, U. S. Atty., Gordon Kroll, Asst. U. S. Atty., Houston, Tex., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, John W. Fisher, David A. Wilson, Jr., Attys., Department of Justice, Washington, D. C., for defendant.

KENNERLY, District Judge.

This is a suit by plaintiffs against defendant for a refund of income tax paid by them for the year 1951. Plaintiffs, Walter E. King and wife, Mary King, citizens and residents of Texas and of this District and Division, owned since its issue United States of America Patent No. 2090206, dated August 17, 1937, covering "Blowout Preventers" or "Blowout Preventer Rams," etc. Same was then community property. On July 15, 1938, Walter E. King entered into a written contract whereby certain rights with respect to such patent were granted to W. D. Shaffer. On January 19, 1949, Walter E. King entered into a supplemental written contract whereby certain rights with respect to such patent were granted to Shaffer Tool Works, the assignee of W. D. Shaffer.

**Walter E. KING, and wife, Mary King, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 8316.**

United States District Court
S. D. Texas, Houston Division.

Nov. 30, 1955.

Under and by virtue of such contracts plaintiffs received during the taxable year 1951 $17,913.50 from the Shaffer Tool Works, this being the percentage of the selling price provided for in such contracts of articles manufactured, sold, etc., by Tool Works thereunder.

Such sum of $17,913.50 was reported by plaintiffs as ordinary income and plaintiffs paid $42,041.64 income tax for the year 1951. Later plaintiffs filed their claim for refund of $7,548.84, based on the claim that such amount of $17,913.50 was *not* ordinary income but under such contract, was the proceeds of the sale of such patent—a capital asset. Such claim for refund was not allowed and this suit followed.

Defendant answered, issue was formed, and both parties have filed motions for summary judgment. This is a hearing on briefs of such motions. The disposition of such motions will dispose of the case. The facts are simple and not greatly, if at all, in dispute.

(a) Plaintiffs owned such patent and entered into the two contracts mentioned on the dates thereof. Copies of the contracts are in the record and are referred to.

(b) The ownership of such patent by plaintiffs, the execution of the two contracts, the amount ($17,913.50) so received by plaintiffs in 1951, are undisputed.

(c) It is undisputed that such sum, $17,913.50, was reported and allowed as ordinary income for the year 1951. That had it been reported and allowed as income from the sale of such patent as a capital asset, plaintiffs would have been required to pay and would have paid $7,548.54 *less* income tax for the year 1951.

(d) It is also undisputed that plaintiffs are in the business of manufacturing oil field supplies, but that such patent was not, during 1951, nor at any time, used in plaintiffs' business or in any way in connection with such business.

(e) It is also undisputed that such patent, which is the only one ever sold by plaintiffs, is dated August 17, 1937, and was owned and held by plaintiffs for more than six months before the making of such contracts.

First: My conclusion is that by such contracts plaintiffs sold all their interest in such patent to Shaffer Tool Works and that same was and constituted a sale of capital asset of plaintiffs within the meaning of the statute.

The granting clause [1] of the contract of July 15, 1938, is as follows (italics mine):

"Licensor grants unto the Licensee and to his assigns, upon the terms and conditions hereinafter set forth the *sole and exclusive right and license to manufacture, use, rent and sell blowout preventer rams of the non-cylindrical type, embodying said invention* and a non-exclusive right and license to manufacture, use, rent and sell blowout preventer rams of other than the non-cylindrical type (except as to such shop rights, if any, as may be owned by Cameron Iron Works) and embodying said invention and any and all improvements made thereon by the Licensor, within and throughout the United States of America, its territories and possessions, to the full ends of the respective terms for which letters patent and any renewals, reissues and extensions

[1]. In the contract of January 19, 1949, the scope of this clause is enlarged by a similar granting clause, the wording being as follows (italics mine): "King hereby grants to Shaffer Tool Works of Brea, California, a supplemental right and license to *make, use and sell* blowout preventers and rams incorporating therein the type of ram disclosed and claimed in the King patent 2,090,206. This license is exclusive to Shaffer under said patent except for the shop rights heretofore granted to Cameron Iron Works as set out in the original agreement of July 15, 1933. King also grants to Shaffer the right to negotiate sub-licenses and collect the royalty therefor from third parties."

thereof may be granted, or until the earlier termination of this agreement and the license hereby granted in the manner hereinafter provided."

The provisions af Paragraph XI of the contract of July 15, 1938, with respect to the termination thereof provide that in case of termination *"Licensee agrees to forthwith reassign the rights herein granted to Licensor"*, which carries with it the idea that title to such patent passed to licensee. All of the other provisions of the contracts are substantially in harmony with this view except that Walter E. King is called the licensor and W. D. Shaffer and Shaffer Tool Works are called the licensees. This is not regarded as controlling.

I think that the case of Edward C. Myers v. Commissioner, 6 T.C. 258, is controlling here. I am not impressed with the reasons given by the Commissioner of Internal Revenue for his refusal to follow the Myers case.[2] It is also true that the case here comes within the ruling by the Tax Court in Cleveland Graphite Bronze Co. v. Commissioner, 10 T.C. 974.

Plaintiffs also strongly rely upon Allen v. Werner, 5 Cir., 190 F.2d 840. I think there is no substantial difference between Allen v. Werner and this case, and that it is decisive of this case. Similar cases are cited which it does not seem necessary to discuss.

From what has been said it follows that defendant's motion should be denied, and that plaintiffs' motion should be granted and plaintiffs should have judgment for the amount sued for.

Let decree be prepared and presented accordingly.

---

2. Defendant in its brief quotes from the Commissioner's mimeograph as follows:

"2. Further consideration has been given to the question as to whether the decision in the Myers case should be accepted as a precedent in the determination of income tax liabilities of other taxpayers with respect to contracts containing essentially the same provisions.

"3. The exclusive license agreement considered in the Myers case provided, among other things, that the licensor is to receive from the licensee, in return for the exclusive right to manufacture, use, and sell the patented articles, annual payments equal to 5 per cent of the selling price of the articles manufactured and sold, such annual payments, however, not to be less than a specified minimum annual amount.

"4. The Bureau has reached the conclusion that where the owner of a patent enters into an agreement whereby, in consideration of the assignment of the patent, or the license of the exclusive right to make, use, and sell a patented article, the assignee or licensee agrees to pay to the assignor or licensor an amount measured by a fixed percentage of the selling price of the article so manufactured and sold, or amounts per unit based upon units manufactured or sold, or any other method measured by production, sale or use either by assignee or licensee, or amounts payable periodically over a period generally coterminous with the transferee's use of the patent, such agreement for income tax purposes, is to be regarded as providing for the payment of royalties taxable as ordinary income."