Charles A. ROE and Wife, Elizabeth S. Roe, Plaintiff,

v.

UNITED STATES of America, Defendant.

Lois Steirly ROZZELL, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 1319, 1320.

United States District Court
S. D. Texas, Corpus Christi Division.

Jan. 14, 1956.

Wood and Pratt, Corpus Christi, Tex., Dougal C. Pope, Houston, Tex., for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Robert B. Ross, Attys., Dept. of Justice, Washington, D. C., Malcolm R. Wilkey, U. S. Atty., Carlos G. Watson, Jr., Asst. U. S. Atty., Houston, Tex., for defendant.

ALLRED, District Judge.

Actions for refund of income taxes paid by plaintiffs for the year 1951, presenting identical questions. The facts are not in dispute and have been stipulated. The sole issue is whether $40,-864.87 reported as ordinary income by each of the taxpayers actually was long term capital gain as the result of sale of patent rights.

Elizabeth Steirly Roe, plaintiff (joined by her husband) in C.A. 1319 and Lois Steirly Rozzell, plaintiff in C.A. 1320, are sisters—the daughters and heirs of Albert R. Steirly and Katherine B. Steirly (both deceased). On September 1, 1938, the Steirlys had owned a patent for more than 6 months which was not stock in trade, and not held primarily for sale to customers in the ordinary course of business, etc. On that date Steirly [1] entered into a written contract [2] with American Iron and Machine Works (hereafter called American), denominated as a "license agreement," the pertinent provisions of which are:

"Whereas, Said American is desirous of acquiring an exclusive right to make, use, sell, and to license others to make, use and sell devices embodying the improvements disclosed and claimed in said patent, and any improvements thereon which said Steirly may now own or control or may hereafter conceive, make or acquire, throughout the entire territory of the United States and all foreign countries, to the full end of the terms of said letters patent, and any and all foreign patents upon the structure thereof which may be granted him.

"Now therefore, in consideration of the sum of one dollar ($1.00) and other valuable consideration, paid by said American to said Steirly, receipt of which is hereby acknowledged, it is agreed by and between the parties hereto as follows:

"First: That said Steirly hereby exclusively licenses said American to make, use, and sell devices, and to license others to make, use and sell devices embodying the improvements disclosed and claimed in said patent and/or any improvements thereon which said Steirly now owns or controls or may hereafter conceive, make or acquire, throughout the entire United States and the territories thereof, and all foreign countries to the full end of the term of said letters patent and any reissues of said letters patent upon structure thereof may be granted.

"Second: That said American shall, on the 20th day of each month, during the life of this agreement, report to said Steirly the number of devices embodying the improvements disclosed and claimed in said patent and/or any improvements thereon coming within the terms of this agreement, which have been sold by it during the preceding calendar month, and accompany such report with payment to said Steirly of royalty at the rate of ten percent (10%) of the net selling price of devices sold on which payment of royalty had not heretofore been paid said Steirly.

\* \* \* \* \* \*

"Thirteenth: That this agreement shall pass to and be binding upon the heirs, executors, administrators, assigns, and successors of both the parties hereto."

The "license agreement" further provided that American should keep books and records of sales open to Steirly for inspection; that it should properly manufacture and diligently market the patented device and advertise at its own expense; that license upon any improvements or patent applications should be given to American without increase of the 10% "royalty"; that Steirly would uphold the validity of the patent and

---

1. As head of the community estate.

2. Exhibit "A" partial stipulation of facts.

prosecute infringements at his own expense, 50% of any recovery to go to American; that if Steirly failed properly to defend the patent or to prosecute for infringement American might do so in Steirly's name at its own expense, 10% of any net recoveries to go to Steirly; that if the patent later was declared invalid by a proper court or if American was unable with reasonable effort to sell the devices in sufficient quantities to warrant further manufacture, the Company might cancel the agreement on 60 days' written notice; that if either party failed to carry out the agreement, the other might give written notice of default and, if the default was not corrected within 30 days, the agreement could be cancelled by the party claiming the default.

Steirly and his wife died intestate and plaintiffs each inherited a ½ interest in the patent. For the year 1951 each of them received $40,864.87 as "royalties" or payments under the contract. They reported this as ordinary income but later filed claims for refunds of $7,-570.20 and $11,497.85, respectively, on the ground that the $40,864.87 was proceeds from the sale of a capital asset.[3] The sole question, therefore, is whether the agreement constituted a sale or assignment and the reported income should be treated as a long term capital gain, taxable under section 117(a) of the Internal Revenue Code of 1939, 26 U.S. C.A. § 117(a), or a mere license agreement, the income from which should be treated as ordinary income.

Plaintiffs say the facts fall squarely within Myers v. Commissioner of Internal Revenue, 6 T.C. 258 and cases therein cited, as well as Allen v. Werner, 5 Cir., 190 F.2d 840, 40 A.F.T.R. 1182; United States v. Carruthers, 9 Cir., 219 F.2d 21; Watson v. United States, 10 Cir., 222 F.2d 689, King v. United States, D.C., 138 F.Supp. 207, opinion by Judge Kennerly of this court, and other cases.

Asserting that the language of the "license agreement" ("royalty" payments rather than a lump sum or installments, etc.) is inconsistent with a sale[4] and pointing to the fact that plaintiffs first reported the items as ordinary income and to the provisions for infringement actions to be filed by Steirly[5] and to American's right to cancel; defendant says Steirly and American did not intend to effect a sale; and that the Commissioner properly treated the arrangement as one whereby American was to exploit the patent as a licensee.[6] Defendant concedes that no one of these factors, standing alone, would be sufficient to brand the agreement simply as a license but insists that the total factual complex surrounding the situation negatives the finding of an assignment.[7] Defendant also concedes that the cases cited by plaintiffs and others[8] sustain their contentions and insists that they are in conflict with Bloch v. United States, 2 Cir., 200 F.2d 63. That case has been distinguished[9] as, indeed, all those cited by defendant can be.

---

3. Plaintiffs also averred that they had not claimed a sufficiently large deduction for amortization of the adjusted basis of the patent but this apparently has been adjusted; and the parties have stipulated that when the court has determined whether the agreement constitutes a sale or assignment of a capital asset or a mere license agreement, they will recompute the over-assessment; if any.

4. Bloch v. United States, 2 Cir., 200 F.2d 63.

5. A factor considered, along with a simultaneous option to purchase, as evidencing that the agreement was a license, not an assignment. Eterpen Financiera Sociedad v. United States, 108 F.Supp. 100, 124 Ct.Cl. 20, certiorari denied 346 U.S. 813, 74 S.Ct. 22, 98 L.Ed. 340; Switzer v. Commissioner of Internal Revenue, 6 Cir., 226 F.2d 329.

6. Bloch v. United States, supra.

7. Switzer v. Commissioner, footnote 5 supra.

8. Commissioner of Internal Revenue v. Hopkinson, 2 Cir., 126 F.2d 406; Commissioner of Internal Revenue v. Celanese Corporation, 78 U.S.App.D.C. 292, 140 F.2d 339.

9. United States v. Carruthers, supra.

570

All the cases hold that the fact that the agreement is denominated as a "license" is not determinative of its character. Nor, I think, does the fact that the consideration is to be paid in installments, denominated as "royalties," measured by a percentage of the sales; nor that Steirly agreed to bring or defend infringement actions in his own name, with the right given to American to do so in his name; nor that the agreement might be cancelled.[10] The fact that plaintiffs originally returned the sums received as ordinary income means nothing. They hardly could be expected to understand the legal distinctions which the courts have been clearing up for years.

Originally, in 1946, the Commissioner announced his acquiescence in the Edward C. Myers decision. In 1950, he announced his non-acquiescence.[11] In order to meet this threat and encourage inventors, Congress enacted section 1235 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1235.[12] This favorable attitude by Congress toward inventors should be considered, I think, in construing liability for taxes as applied to their assignments, however denominated. Certainly it demonstrates that decisions cited by defendants as to "retention of an economic interest" in natural resources cases [13] are not applicable.

I hold, under all the stipulated facts, that the agreement between Steirly and American was an assignment, not a mere license agreement; and that the $40,864.87 reported by each plaintiff constituted proceeds from the sale of a capital asset and did not constitute ordinary income. Judgment will go accordingly. The Clerk will notify counsel to submit proper order.

10. Watson v. United States, supra.

11. Mimeograph 6490, Cumulative Bulletin 1950–1, p. 9.

12. Senate Finance Committee Report No. 1622 on H.R. 8300, 83rd Congress, Second Session.

13. Burnet v. Harmel, 287 U.S. 103, 53 S. Ct. 74, 77 L.Ed. 199; Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325; Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Kirby Petroleum Co. v. Commissioner, 326 U.S. 599, 604, 66 S.Ct. 409, 90 L.Ed. 343.