T.C. Memo. 2010-222

UNITED STATES TAX COURT

BARRY LEE FARRIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6314-09.                    Filed October 12, 2010.

<u>Craig E. Barrere</u>, for petitioner.

<u>Kimberly A. Kazda</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined a $14,187 deficiency,
a $2,837 addition to tax for failure to file a return timely
under section 6651(a)(1) and a $2,837 accuracy-related penalty
under section 6662(a) with respect to petitioner's Federal income

tax for 2006.[1]  After concessions, the sole issue before this Court is whether the payments petitioner received from Cardinal Health Technologies, LLC (Cardinal Health) in 2006 constituted ordinary income or long-term capital gain.[2]  We hold the payments should be treated as ordinary income.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the stipulation of settled issues and their accompanying exhibits are incorporated by this reference.  Petitioner resided in Pollock Pines, California at the time he filed the petition.

Petitioner invented a method and apparatus for transferring fluid from a vial into a syringe without using a needle (needleless syringe).  The needleless syringe made it possible to fill a medical syringe without exposing the liquid contents to airborne contaminants.  Petitioner applied for and received four patents with the United States Patent and Trademark Office (PTO) for the needleless syringe (needleless syringe patents).

In March 2004 petitioner assigned his entire right, title and interest in and to all needleless syringe patents to Cardinal

---

[1]All section references are to the Internal Revenue Code in effect for 2006, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]Petitioner concedes liability for the deficiency, addition to tax for failure to file a return timely and accuracy-related penalty.

Health, a pharmaceutical manufacturing and packaging business, for "$1 and for other good and valuable consideration." The assignment agreement did not define "other good and valuable consideration" or provide for any other compensation or payment. Instead, it stated that petitioner's "receipt of * * * [the $1 and other good and valuable consideration] is hereby acknowledged."[3] The parties recorded and filed the assignment agreement with the PTO in July 2005.

Three months after signing the assignment agreement, petitioner entered into a sales representative agreement (representative agreement) with Cardinal Health. The representative agreement stated that petitioner would devote approximately forty hours per week for two years performing services as an independent contractor for Cardinal Health. All petitioner's services related solely to Cardinal Health's Smart Amp Products. The representative agreement did not define "Smart Amp Products." It stated, however, that petitioner had "extensive knowledge and experience" regarding such products. Petitioner agreed to use his "best efforts" to perform all normal, routine services of a sales representative and train

---

[3]Petitioner's counsel stated at trial that Cardinal Health paid petitioner an up-front lump sum. The assignment agreement does not reference a lump sum payment, however, and petitioner failed to present evidence regarding any such payment.

Cardinal Health personnel on the use of Smart Amp Products.[4]  The representative agreement enumerated several services petitioner would perform including developing a strategy for generating sales for Smart Amp Products and establishing business relationships with potential customers.  Cardinal Health agreed to pay petitioner $7,500 per month, which represented "full consideration for the services * * * [petitioner] * * * rendered."  The representative agreement contained an "Entire Agreement" clause stating that "the [representative] [a]greement constitutes the entire agreement between the parties" relating to petitioner's services and Cardinal Health's payments, and the parties have no other agreements relating to the representative agreement's subject matter.  The representative agreement stated that petitioner would begin providing services to Cardinal Health in May 2004, even though the agreement was not signed until June 2004, and the parties treated June as the start of the 2-year contract.

Petitioner received the final five monthly checks from Cardinal Health totaling $37,500 in 2006.[5]  Petitioner failed to

---

[4]Petitioner's counsel at trial stated that petitioner never performed the services described in the representative agreement. Petitioner presented no evidence, however, to suggest the parties failed to abide by the representative agreement, and this Court will not accept counsel's bald assertion as fact.  See, e.g., Smith v. Commissioner, T.C. Memo. 2001-313.

[5]Petitioner reported the payments he received from Cardinal
(continued...)

report the payments and failed to file a timely Federal income tax return for 2006.[6]  Respondent examined petitioner's Federal income tax return for 2006 and issued petitioner the deficiency notice.

Petitioner timely filed a petition with this Court.  The parties filed a stipulation of settled issues in which petitioner admitted that he received $37,500 from Cardinal Health in 2006.  Petitioner challenges only the characterization of the unreported income.

## OPINION

We are asked to decide whether the payments petitioner received from Cardinal Health constitute ordinary income or long-term capital gain.  Petitioner claims that the payments he received in 2006 were from the sale of the needleless syringe patents and should therefore be characterized as long-term capital gain.  Respondent argues that the payments received constitute ordinary income from the performance of sales and training services described in the representative agreement.  We

---

[5](...continued)
Health in 2004 and 2005 on timely filed Federal income tax returns.  Those years are not at issue nor are they binding.  See Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183-184 (1957); Demirjian v. Commissioner, 457 F.2d 1, 6-7 (3d Cir. 1972), affg. 54 T.C. 1691 (1970).

[6]Petitioner filed his Federal income tax return for 2006 more than three months after the filing deadline.

shall consider the parties' arguments after first addressing the burden of proof.

The Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a). Section 7491(a) shifts the burden of proof to the Commissioner in certain situations. Petitioner does not argue that the burden of proof shifts to respondent under section 7491(a) and has not shown that the threshold requirements of section 7491(a) were met. See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001). Accordingly, petitioner bears the burden of establishing that the payments he received from Cardinal Health constitute long-term capital gain, not ordinary income.

Generally, income a patent holder receives from the transfer of substantially all rights to a patent shall be treated as long-term capital gain. Sec. 1235(a). The parties agree that petitioner transferred all of his rights in the needleless syringe patents to Cardinal Health and that any income petitioner received for the transfer of the patents constitutes long-term capital gain. The parties differ on whether the payments petitioner received in 2006 were for the needleless syringe patents or for tangential sales and training services.

A patent transferor may render ancillary and subsidiary services in connection with the sale and transfer of a patent without affecting the capital nature of the total sale proceeds.

See Ruge v. Commissioner, 26 T.C. 138 (1956); Gable v. Commissioner, T.C. Memo. 1974-312. Ancillary and subsidiary services include providing the transferee with technical knowledge and consulting services that are an integral part of the patent transfer. See Ruge v. Commissioner, supra; Gable v. Commissioner, supra. A patent transferor will be deemed to have received ordinary income, however, when the transferor receives compensation for services that are unrelated or tangential to the patent transfer. Gable v. Commissioner, supra. Petitioner contends that the services provided for in the representative agreement were incidental and subsidiary to the sale and transfer of the needleless syringe patents. We disagree.

We first must determine whether the services rendered were in connection with the transfer of the needleless syringe patents. Petitioner transferred the needleless syringe patents to Cardinal Health in the assignment agreement. Petitioner acknowledged in the assignment agreement that he had received full consideration for the needleless syringe patents. The assignment agreement did not refer to any additional consideration or any future agreement that the parties would enter or any other agreement regarding the transfer of the patents.

Petitioner and Cardinal Health entered into the representative agreement more than three months later. The

representative agreement did not refer to any transferred patents or previous agreements.  Rather, the representative agreement dealt only with petitioner's services as a sales representative and employee trainer for Cardinal Health's Smart Amp Products. Cardinal Health paid petitioner under the representative agreement for "full consideration for services rendered." Moreover, the "Entire Agreement" clause stated that the representative agreement constituted the entire agreement between the parties related to petitioner's performance of services and that the parties had no other agreements affecting petitioner's performance of services.

Petitioner argues that the Smart Amp Products are synonymous with the needleless syringe patents and that any services performed were connected to the sale of the patents.  Neither agreement between petitioner and Cardinal Health makes this comparison, however, and petitioner has failed to provide the Court with any documents or other evidence to support this contention.  Moreover, petitioner failed to testify or present any other evidence that would show that he and Cardinal Health intended the service payments to be in exchange for the patents. Absent evidence to the contrary, we find that petitioner assigned his needleless syringe patents in the assignment agreement and the services performed under the representative agreement were not in connection with the transfer of any patent.

Moreover, we find that services petitioner performed under the representative agreement were not ancillary and subsidiary to the sale of the patents. Petitioner agreed to work forty hours per week for two years as a sales representative for Cardinal Health's Smart Amp Products. Cf. Ruge v. Commissioner, supra (patent transferor agreed to provide consulting services affecting the operations of transferor's patented invention not to exceed 60 days per year). We recognize that Cardinal Health may have hired petitioner because of his extensive knowledge and experience. We note, however, that his job duties consisted primarily of generating sales as opposed to providing Cardinal Health with technical knowledge about Smart Amp Products. Cf. Gable v. Commissioner, supra (patent transferor's duties included developing and researching technical information on the patented invention). Moreover, petitioner agreed to use his "best efforts" to perform the enumerated sales and training duties. The Court has held that income received under similar "best efforts" provisions constitutes ordinary income. See Ruge v. Commissioner, supra; see also Kimble Glass Co. v. Commissioner, 9 T.C. 183 (1947).

We find that petitioner has not presented evidence to show that the services he performed were ancillary and subsidiary to the transfer of the patents. Petitioner has the burden of proof, and he has failed to meet his burden. We find that the payments

petitioner received from Cardinal Health in 2006 were for services performed, as stated in the representative agreement, and not for the sale of the patents.  Accordingly, we hold that petitioner received the $37,500 as ordinary income from Cardinal Health in 2006.

We have considered all arguments made in reaching our decision, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.