KAVANAGH, Collector of Internal Revenue, v. EVANS.

No. 11203.

United States Court of Appeals
Sixth Circuit.

April 9, 1951.

and/or sell brakes * * * under any and all Evans Inventions and Evans Improvements, and the patents listed on Exhibit D hereof, which license is free from royalty or other license fees and shall run for the full end of any letters patents coming within the scope of this agreement; the license granted Kelsey-Hayes by this section is non-exclusive as to Evans Improvements and the patents listed on Exhibit D hereof and exclusive as to Evans Inventions except it is subject to the outstanding rights, if any, under the agreements listed on Exhibit C hereof, and to the license retained by Evans under the provisions of Section 4 hereof."

"3. Evans grants to Kelsey-Hayes * * * the right to grant sub-licenses to others for the future, to manufacture or have manufactured for it and/or use and/or sell brakes * * *. under any or all Evans Inventions and Evans Improvements, and the patents listed on Exhibit D hereof, * * *."

And this is followed by similar matter quoted in Section 2.

"4. Evans hereby retains a right under any and all Evans Inventions to manufacture for use, and/or sale brakes * * * and/or associated parts thereof or therefor, intended and designed for, or for use with, power actuated mechanism for brakes * * * but if not used by Evans, Evans may transfer this right to one other person. * * *"

By the terms of the contract appellee was to receive and did receive $50,000.00 upon its execution and a like amount on January 1, 1938 and January 1, 1939, and $75,000.00 on January 1, 1940. The contract further provides that appellee, upon the payment of the last mentioned sum, would by proper assignment transfer or cause to be transferred to Kelsey-Hayes the entire right, title and interest in and to the Evans Inventions but subject to the license retained by him as set forth in Section 4. Although appellee was ready and willing to transfer his title to the Evans Inventions, no transfer was ever made because the patents became useless shortly after the execution of the agreement and both parties concluded that the actual transfer was hardly worth its

Edward J. P. Zimmerman, Washington, D. C., Theron Lamar Caudle, Ellis N. Slack, A. F. Prescott and Edward J. P. Zimmerman, all of Washington, D. C., Edward T. Kane, Roger P. O'Connor, Detroit, Mich., on brief, for appellant.

Melvin S. Huffaker, and Carroll C. Grigsby, Detroit, Mich., Carroll C. Grigsby, Detroit, Mich., on brief; Smith & Huffaker, Detroit, Mich., of counsel, for appellee.

Before HICKS, Chief Judge, and SIMONS and MARTIN, Circuit Judges.

HICKS, Chief Judge.

Appellee, Evans, brought suit in the District Court to recover an alleged over-payment of income taxes for the years 1938–1941. The court rendered judgment in his favor for the sum of $15,564.64, with interest. Stripped of irrelevancies, the question for review is, whether the court erred in determining that appellee's gains from the transfer of his patent rights were taxable as gains from the sale of capital assets. Sec. 117(a) (4) of the Internal Revenue Code, 26 U.S.C.A. § 117(a) (4). If they were, an affirmance results; otherwise not.

The court found upon substantial and undisputed evidence that appellee negotiated with Kelsey-Hayes Wheel Company for a licensing agreement under his patent for a four wheel brake. Kelsey-Hayes was unable to enter into such agreement because its principal customer was opposed to the payment of royalties by its suppliers. Thereupon, on January 1, 1937, appellee entered into an agreement with Kelsey-Hayes which in so far as it is applicable here, is as follows:

"2. Evans hereby grants to Kelsey-Hayes a license * * * to manufacture or have manufactured for it and/or use

execution. There can be no doubt however that Kelsey-Hayes had become the equitable owner of the patent rights assigned by the agreement.

It is urged that the agreement did not transfer and assign appellee's patent rights as provided in Title 35 U.S.C.A. § 47, because of the use therein of the word "non-exclusive" but it seems obvious that this term has reference to the rights retained by appellee in Sec. 4 above quoted. It is pointed out that the word "non-exclusive" is also used in a supplemental agreement but we do not regard this supplemental agreement of particular significance because it was not entered into until after the final payment of $75,000.00 had been made to appellee.

We concur in the opinion of the District Judge that the properties sold by appellee were capital assets and that the profits thereon were taxable as such. We are the better satisfied with this construction of the agreement between appellee and Kelsey-Hayes because it manifestly embodies the intention of the parties thereto. Further, this result quite clearly appears by the exclusion of "royalty or other license fees" and to some extent at least by the provision that the agreement "shall run for the full end of any letters patents coming within the scope of this agreement * * *" and by the further provisions for payments in lump sum instalments. It does not matter that appellee retained the rights set forth in Sec. 4. It was entirely lawful for him to retain an undivided part or share of his exclusive patent rights. United States v. General Elec. Co., 272 U.S. 476, 489, 47 S.Ct. 192, 71 L.Ed. 362; Waterman v. McKenzie, 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923; Gayler v. Wilder, 10 How., 477, 494, 13 L.Ed. 504; Moore v. Marsh, 7 Wall., 515, 19 L.Ed. 37; Kenyon v. Automatic Instr. Co., 6 Cir., 160 F.2d 878, 882.

In the Kenyon case just cited, in referring to the Waterman case (the classic case on the subject of patent assignments and licenses) we said: "The Waterman case further points out, that whether the transfer of an interest or right under a patent is an assignment or a license, does not depend upon the name by which it is called, but upon the legal effect of its provisions.

No particular form is required for an assignment but the instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent." See also Sirocco Engineering Co. v. Monarch Vent. Co., C.C., 184 F. 84.

The contention that the agreement was a license rather than an assignment or sale seems to have been an afterthought. It was presented to the court in a petition to rehear filed May 23, 1949, following the original opinion of the court of April 27, 1949.

Affirmed.