James R. WATKINS and Lucile L. Watkins

v.

UNITED STATES of America.

Civ. No. 5052.

United States District Court
D. Connecticut, Civil Division.

March 12, 1957.

John H. Weir, Thompson, Weir & Mac-Donald, New Haven, Conn., for plaintiffs.

Simon S. Cohen, U. S. Atty., for District of Connecticut, Hartford, Conn., Sheldon J. Gitelman, Dept. of Justice, Washington, D. C., for defendant.

ANDERSON, District Judge.

Findings of Fact

1. On April 17, 1934 there was issued to the plaintiff, James R. Watkins, U. S. Letters Patent No. 1,955,107 covering a wood cleated corrugated shipping container.

2. Subsequently, additional Letters Patent were issued to him for improvements on the shipping container as follows: October 9, 1934, Letters Patent No. 1,976,693; December 27, 1938, Letters Patent No. 2,141,497; and May 13, 1939, Letters Patent No. 2,159,642.

3. In March 1937 the plaintiff, James R. Watkins, entered the employ of Dillman Industries, Inc. of Caruthersville, Missouri, manufacturers of lumber, wooden boxes and crates, and at that time entered into an agreement with Dillman Industries, Inc. whereby Watkins granted to the corporation a non-exclusive license to manufacture containers under the patents which, up to that time, had been issued to him.

4. The manufacturing and sales of the shipping containers proved to be successful and early in 1940, after the last two patents relating to the shipping container had been issued to Watkins, negotiations went on between James R. Watkins and some of the officers and leading shareholders of Dillman Industries, Inc. acting both on behalf of the corporation and themselves personally, relative to new agreements for the exploitation of the patents.

5. During said period a new corporation, Watkins Patents, Inc., was organized under the laws of the State of Illinois in which the plaintiff, James R. Watkins, owned twenty per cent of the shares issued and outstanding and the remaining eighty per cent of said shares were owned by Dillman Industries, Inc. or officers and shareholders of Dillman Industries, Inc.

6. On April 17, 1940 the four patents above referred to were the subject of five agreements entered into, eo instante, which may generally be summarized as follows:

(a) An agreement between James R. Watkins and Watkins Patents, Inc. by which Watkins transferred to Watkins Patents, Inc. a non-transferable exclusive license for the use of and sublicensing under the patents. By the same agreement Watkins Patents, Inc. agreed to pay Watkins $3,600 in cash and twenty per cent of the stock in Watkins Patents, Inc. and one-third of the net royalties derived from licensed manufacture under the patents, subject to certain minor qualifications. Said contract provided further that Watkins had a non-transferable, non-exclusive sublicense under the patents, and that anyone with whom he became associated to practice his sub-license had a right to sub-license from Watkins Patents, Inc. even after the termination of the association between Watkins and such individual, co-partnership or corporation. Said agreement further provided that in the event of litigation concerning said patents, or any of them, Watkins Patents, Inc. had a duty to defray the cost of such litigation up to the amount of $10,000 and that with regard to expenditures above said amount Watkins Patents, Inc. had the option of paying the

additional amount necessary or to refuse to do so, in which event said James R. Watkins had the right to carry on such litigation at his own expense with certain provisions for reimbursement in the event of his successful prosecution or defense of said litigation. Said contract further provided that sub-licenses of Watkins Patents, Inc. were subject to the approval of James R. Watkins and that all existing licenses were transferred to Watkins Patents, Inc. by James R. Watkins. The contract also provided that Watkins Patents, Inc. had a duty to account to Watkins and that copies of the contract and assignments of prior licenses should be in proper form for filing in the U. S. Patent Office.

(b) An agreement between Watkins Patents, Inc. and Dillman Industries, Inc. by which Dillman Industries received a non-transferable, non-exclusive license to manufacture and sell containers under the patents of Watkins Patents, Inc. in return for its payment to Watkins Patents, Inc. of royalties of one per cent of the net sales of containers sold under the license, such royalties to become one and one-half per cent in case the employment of James R. Watkins by Dillman Industries, Inc. was terminated.

(c) An agreement between Dillman Industries, Inc. and James R. Watkins by which a license previously granted to Dillman Industries, Inc. by Watkins was canceled. This agreement provided further that Watkins' employment contract with Dillman Industries, Inc. was terminated and a new employment contract entered into, under the terms of which Dillman Industries, Inc. was to pay Watkins $400 per month and twenty-five per cent of Dillman Industries' net income from the manufacture and sale of products under Watkins Patents. At the end of any year either party could terminate the employment contract by giving notice. The agreement also contained certain provisions concerning the holding by Watkins of stock in Dillman Industries, Inc.

. (d) An agreement between James R. Watkins, Dillman Industries, Inc. and Watkins Patents, Inc. which incorporated agreement (a) above, canceled a previous license given by Watkins to Dillman Industries, Inc. and provided for the execution of a sub-license to Dillman Industries, Inc. from Watkins Patents, Inc. (agreement (b) above). The agreement contained certain other provisions, including Dillman Industries' promise to loan Watkins Patents, Inc. certain amounts for the purpose of paying litigation expenses that might arise in defense of Watkins' patents.

(e) An agreement between Watkins Patents, Inc. and James R. Watkins by which Watkins Patents, Inc. purported to grant James R. Watkins a non-transferable, non-exclusive license to manufacture and sell containers under the Watkins Patents in return for royalty payments of one and one-half per cent of the net sales of such containers. The agreement further provided that said license was not to be used by James R. Watkins as long as he was employed by Dillman Industries, Inc.; but that upon leaving the employment of Dillman Industries, Inc., (which at his option he might do at the end of any year) he might operate under the license, or if he became associated with any individual, co-partnership or corporation, such enterprise might manufacture and sell under his license. The agreement provided that upon termination of Watkins' association with any such individual, co-partnership or corporation, such individual, co-partnership or corporation would have the right to obtain a license from Watkins Patents, Inc. The agreement expressly provided that Watkins, upon termination of such associations, might continue to use his license individually or enter into subsequent associations, one at a time, with other individuals, co-partnerships or corporations, which could use his license during the period of association and obtain a license from Watkins Patents, Inc. upon termination of the association.

7. The agreement between James R. Watkins and Watkins Patents, Inc. did not transfer from James R. Watkins to

the corporation, nor did the parties intend that it should transfer, all the substantial rights to the patents.

## Conclusions of Law

1. This court has jurisdiction of the subject matter and of the parties in this action.

2. The agreement between James R. Watkins and Watkins Patents, Inc. did not constitute a sale or assignment of the patents but was only the grant of a license.

3. The income reported by the plaintiffs in their 1949 through 1952 returns and derived from the licensing by James R. Watkins of Watkins Patents, Inc. was ordinary income and not capital gains.

## Discussion

■ The question presented is whether the items of income received by the plaintiffs for the years 1949 through 1952 and derived from agreements with Watkins Patents, Inc. concerning Watkins' patents were ordinary income as set out in the tax returns which they filed for those years, or were actually capital gains from a sale of assets held for more than six months under Sec. 117(a) Internal Revenue Code of 1939, 26 U.S.C. § 117(a) as to the calendar years 1949 and 1950, and Sec. 117(q) Internal Revenue Code of 1939 as to the calendar years 1951 and 1952. The plaintiffs assert that they were capital gains and in this action they are suing for a refund.

■ It was stipulated by the parties at the trial that testimony might be received from the plaintiffs, relative to the history of the parties to the contracts referred to in the finding, the business relationship of the parties and the negotiations before and during the making of the agreements as well as some testimony as to what the parties to the contracts actually did pursuant to them. This was received with the understanding that the court, after hearing all of the evidence and arguments in the case, would rule upon the defendant's objection that such parol testimony was inadmissible as an effort to vary the terms of the written contract. That objection is overruled and the subsequent motion by the defendant to strike is denied.

■ It is the Government's claim that what the patentee, Watkins, transferred to Watkins Patents, Inc., was a mere license rather than an assignment or sale of the patents. It relies upon that part of the opinion in Waterman v. Mackenzie, 138 U.S. 252, at pages 255 and 256, 11 S.Ct. 334, at page 335, 34 L.Ed. 923, which in effect says that the grant of anything less than the "right to make, and the right to use, and the right to sell" is not an assignment or sale of a patent. See Broderick v. Neale, 10 Cir., 201 F.2d 621. While the plaintiffs are correct in pointing out that there is no absolute requirement that the precise language of this trilogy be used or that exact synonyms for "make", "use" and "sell" be set out in the agreement of transfer, nevertheless, the agreement must in the language it employs in the context of the case convey all substantial rights to the patent, and the language used must be broad enough for this purpose. The plaintiffs claim that the wording used by James R. Watkins in the agreement with Watkins Patents, Inc. "does hereby transfer and grant * * * the non-transferable exclusive license for the use of and sublicensing under each and all * * * the patents" is sufficient. Under certain circumstances and in certain contexts such an imprecise expression of assignment or sale could be so construed. Reid v. Commissioner, 26 T.C. 622; Associated Patentees, Inc., v. Commissioner, 4 T.C. 979; Daily v. Universal Oil Products Co., D.C.D.Ill., 76 F.Supp. 349; and Pike v. United States, D.C.D.Conn., 101 F.Supp. 100. These and other cases also state that the use of the word "license" instead of the words "assign" or "sell" is not in itself conclusive. It is, however, something which may be considered with the other facts and circumstances of the case to determine what the operative intent of the parties was. E. W. Bliss Co. v. United States, 253 U.S.

187, 40 S.Ct. 455, 64 L.Ed. 852. In Switzer v. Commissioner of Internal Revenue, 6 Cir., 226 F.2d 329, at page 330 the court, after citing Waterman v. Mackenzie, supra, and two Sixth Circuit cases said:

" * * * Those cases also point out that whether the instrument constitutes an assignment or a license does not depend upon the name by which it is called, but upon the legal effect of its provisions.

"However, it is also the rule that while such words in a license agreement give rise to an assignment of a patent where the document granting such a license is consistent with a present intention by the owner to transfer the patent, they can not be held the equivalent of an assignment where the document itself and the total factual complex surrounding the transaction negatives such a transfer. Although no particular form is required for an assignment, the instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent. * * * "

In the present case five written agreements were executed and delivered at the same time and they must all be construed together. What the parties intended by a particular phrase or provision in the agreements must be found from the language itself, its context in the written instrument of which it is a part and the other four agreements, all considered against the background of the surrounding circumstances. Such a study makes it apparent that what was transferred by Watkins to Watkins Patents, Inc. was the power to license or, as the court described it in Six Wheel Corporation v. Sterling Motor Truck Co., 9 Cir., 50 F.2d 568 at page 573, "a license to license".

Looking at the facts of the case in their broadest aspect, James Watkins owned certain patents in connection with which there was promise of considerable demand from various manufacturers for licenses from which profitable royalties could be realized. To promote the dissemination of licenses, to provide for means to protect the patents in infringement actions, and to establish offices to handle the business of the licenses, royalty accountings, etc., required money which Watkins did not have. Dillman Industries, Inc. already had, and for some time had used, a license to manufacture and sell Watkins' patented container, and Watkins had an employment contract with Dillman Industries, Inc. The individuals who owned controlling interests in Dillman Industries, Inc. had the necessary capital to promote the licensing under Watkins Patents and saw an opportunity to make a profit in doing so in a field with which they were familiar. To limit the responsibilities of themselves and Dillman Industries, they agreed with Watkins on the organization of Watkins Patents, Inc. through which the financing and promotion of licensing would be carried on. The power to license with the incidental protective right to conduct or participate in infringement actions, and the rights in outstanding licenses were the only incidents of ownership which any of the parties intended to have conveyed and were in fact the only interests conveyed by James R. Watkins to Watkins Patents, Inc. This purpose and intention is clearly expressed in the agreement between James R. Watkins, Party of the First Part, Dillman Industries, Inc., Party of the Second Part and Watkins Patents, Inc., Party of the Third Part, where it says:

"First Party is desirous of having a wider and more general use of, and more extensive manufacture of containers covered by his patents, and to accomplish this has approached and proposed to Second Party that Second Party enter into a contract with him for the exclusive handling of his patents by means of licensing various individuals and firms throughout the United States of America to manufacture crates under the above referred to patents owned by First Party.

"Second Party realizes and sees the advantage of such an arrangement and has caused to be organized under the laws of the State of Illinois a corporation, Party of the Third Part under this agreement, known and designated as Watkins Patents, Inc. * * * "

Where the granting clause of the Watkins—Watkins Patents, Inc. agreement says " * * * license for the use of and sub-licensing under", it is also clear from its context, the surrounding circumstances and the witnesses' testimony, particularly Mr. Dillman's, that "use" meant the exploitation of the patents by issuing licenses. Its meaning was intended by the parties to be limited to this alone; it did not intend a conveyance of all of the substantial rights in the patents, and it did not mean or include either the right to manufacture or the right to sell or the right to use the product. In his testimony Mr. Dillman said, "He [Mr. Watkins] was anxious to get the box more generally accepted across the country and the only way that could be done would be to license others to do it. * * * Mr. Watkins talked to myself and Mr. Weiss from time to time stating what his ideas were with reference to expanding the use of the Watkins box and licensing others to make it. * * * We created the new corporation so that it could handle the licensing end of it." In response to a proper question on cross-examination, "That is, the Watkins Patents, Inc. sole job was to handle the sub-licensing?" he replied, "It was to handle the licensing of licensees."

The plaintiffs' witnesses in their testimony frequently talk of the transfer by Watkins to Watkins Patents, Inc. of "complete ownership" or "ownership" of the patents and that the controlling interests in Dillman Industries would not have entered into financing Watkins Patents, Inc. without such complete ownership. It is significant, however, that neither any such words nor their legal equivalents were used in the lengthy written agreements drafted by their counsel; and the claim must be rejected. The individuals financing Watkins Patents, Inc. sought and received for Watkins Patents, Inc., which they controlled, only the power, exclusive (except for what was kept in the hands of Watkins), to grant licenses under the patents and to have the right to royalties flowing from the licenses issued. Their interest was financial; and to protect their investment and insure their prospects for profit, they neither sought nor needed to have Watkins Patents, Inc. vested with the rights to manufacture or sell or use the products of the patents or any rights other than the legal interests conveyed to Watkins Patents, Inc., i. e. the power to license and the right to a share in the royalties.

The question in this case may be approached in another way. Even if it is assumed, as plaintiffs claim, that all the legal relations which go to make up ownership of the patents were transferred in the granting clause in the agreement between James R. Watkins and Watkins Patents, Inc., many legal interests out of the whole bundle of legal interests which constitute ownership found their way back into the hands of James R. Watkins as a result of the whole transaction set out in the five agreements. The question, therefore, may be put in this fashion: For income tax purposes what legal interests may still remain in the hands of the patentee who purports to sell his patents to another without reducing that sale to a grant of a license?

After the agreements became operative, Watkins had an employment contract with Dillman Industries, Inc. which after one year he could terminate at will. Upon such termination he had a license to practice the patents and the power to require Watkins Patents, Inc. to license any individual, co-partner or corporation with whom Watkins had associated himself for manufacturing and selling the products and from whom Watkins had disassociated himself; and Watkins had the power to disseminate licenses in this manner by making and breaking such associations without limit.

Watkins had a veto power in the requirement of his approval of any licenses granted by Watkins Patents, Inc. He was a substantial though minority shareholder of Watkins Patents, Inc. He could compel Watkins Patents, Inc. to finance infringement litigation up to $10,000 in cost and above that amount, if the corporation did not choose to do so, he had either to bear the responsibility himself with right of reimbursement only if he were successful or withdraw from the actions. The legal interest granted by Watkins to Watkins Patents, Inc. was non-transferable. Watkins was to be paid in part by a share in royalties; and a default by the other parties in certain obligations under the agreements would work a termination of their interests in the patents and a return of those interests to Watkins.

■ Thus, while James R. Watkins transferred with his right hand a bundle of legal interests which he claims constituted complete ownership, he took back with his left hand a substantial number of those interests. Because of the special status of patents and the favorable attitude of Congress toward inventors, the courts, in construing agreements in the course of determining tax liability, have permitted inventors to retain some legal interests in the nature of safeguards for royalty payments and to prevent the shelving or misuse of patents. Roe v. United States, D.C.S.D.Tex., 138 F.Supp. 567, at page 570, and Kronner v. United States, 110 F.Supp. 730, 734, 126 Ct.Cl. 156.

■ An assigning patentee may have an interest in or be employed by a corporate assignee, Hofferbert v. Briggs, 4 Cir., 178 F.2d 743; and the purchase price for the patents may be paid in royalties. Watson v. United States, 10 Cir., 222 P.2d 689; First National Bank of Princeton v. United States, D.C.D.N. J., 136 F.Supp. 818, 822. See: Bloch v. United States, 2 Cir., 1952, 200 F.2d 63; Title 26 U.S.C. § 1235. He may reserve to himself or have the assignee transfer to him a license to practice the patent.

Kavanagh v. Evans, 6 Cir., 188 F.2d 234; Crook v. United States, D.C.W.D.Pa., 135 F.Supp. 242, 253. He may require that the transferee obtain his consent for each license issued. Thompson v. Johnson, Collector, 50–2 U.S.T.C. 9428. He may prohibit the transferee from further assigning the interests conveyed. Watson v. United States, 10 Cir., 222 F. 2d 689, 691; Crook v. United States, D. C.W.D.Pa., 135 F.Supp. 242, 252; Dreymann v. Commissioner, 11 T.C. 153, 161. He may retain rights and duties in connection with prosecuting and defending infringement suits. First National Bank of Princeton v. United States, D.C.D.N.J., 136 F.Supp. 818, 822. He may retain the power to transfer the license which he reserved or which was set over to him by his assignee to one other person if he himself does not elect to use it. Kavanagh v. Evans, 6 Cir., 188 F.2d 234. He may reserve the right to cancel upon the breach of some duty assumed by the assignee, such as assisting in prosecuting or defending the patent in infringement actions or paying royalties or upon the happening of some future event beyond the assignor's control which renders continuance of the agreement impractical. Littlefield v. Perry, 21 Wall. 205, 88 U.S. 205, 220, 22 L.Ed. 577; Allen v. Werner, 5 Cir., 190 F.2d 840; First National Bank of Princeton v. United States, D.C.D.N.J., 136 F.Supp. 818, 822; and Dreymann v. Commissioner, 11 T.C. 153, 161.

While in the cases cited an assignment or sale was not reduced to a license because there remained in the hands of the assigning patentee two, three or four of the legal interests mentioned, there is no case where all of them were held in his hands; and in the cases where a number of such interests remained in the patentee, there was a stronger context and evidence of intention to sell or assign than in the present case. It is necessary to draw the line somewhere, and it seems plain that Watkins came out of the agreements with such extensive interests that even assuming, arguendo, an initial assignment in the

granting clause of the contract between him and Watkins Patents, Inc., he finally as a result of the whole transaction, conveyed no more than a license. In making this over-all determination, this court is mindful of the apparent intent of Congress:

"The section does not detail precisely what constitutes the formal components of a sale or exchange of patent rights beyond requiring that all substantial rights evidenced by the patent (other than the right to such periodic or contingent payments) should be transferred to the transferee for consideration. This requirement recognizes the basic criteria of a 'sale or exchange' under existing law, with the exception noted relating to contingent payments, which exception is justified in the patent area for 'holders' as herein defined. * * * Moreover, the courts have recognized that an exclusive license agreement in some instances may constitute a sale for tax purposes even where the right to 'use' the invention has not been conveyed to the licensee, if it is shown that such failure did not represent the retention of a substantial right under the patent by the licensor. It is the intention of your committee to continue this realistic test, whereby the entire transaction, regardless of formalities, should be examined in its factual context to determine whether or not substantially all rights of the owner in the patent property have been released to the transferee rather than recognizing less relevant verbal touchstones. * * * " Report of the Committee on Finance, United States Senate, to accompany H.R. 8300, dated June 18, 1954, page 439.

In none of the cases decided in favor of a patentee is there an example of the retention of such extensive powers as there is in those which Watkins kept to himself. Once he had left the employ of Dillman Industries, Inc., which he could do at his own volition after a year, Watkins could associate himself with another to manufacture and sell and that other would gain and retain a license even after Watkins had become disassociated from him; and thereafter Watkins could make a new association with someone else, who would thereby also gain a license and so on without limit. At the same time he could veto the granting of licenses by Watkins Patents, Inc. to someone of whom he did not approve. He possessed power to do more than his transferee could do.

After considering all of the evidence and the claim of the parties, it must be concluded that the plaintiffs have failed to establish that James R. Watkins and those contracting with him either intended or accomplished a sale or assignment of the patents to Watkins Patents, Inc. and that the payments in question must be treated as ordinary income and not as capital gains.

Judgment, with costs, may enter in favor of the defendant against the plaintiffs.